# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**CONRAAD L. HOEVER,**

    **Plaintiff,**

**VS.**                        **Case No. 4:14cv273-WS/CAS**

**KEVIN HAMPTON,**

    **Defendant.**

_____/

## THIRD REPORT AND RECOMMENDATION

This civil rights case was filed by Plaintiff Conraad Hoever pro se. Mr. Hoever filed a fourth amended civil rights complaint pursuant to 42 U.S.C. § 1983 on January 12, 2015.[1]  ECF. No. 18.  The complaint alleged that on August 31, 2012, Defendant Kevin Hampton, a Sergeant at Franklin Correctional Institution, violated Mr. Hoever's First Amendment rights by threatening to retaliate against him for filing grievances.  *Id.*

---

[1] Previously, Plaintiff's second amended complaint, ECF No. 12, was dismissed as to all claims against all other Defendants.  ECF Nos. 13, 15.  Only Plaintiff's First Amendment claim against Defendant Hampton survived an earlier motion to dismiss.  A second Report and Recommendation, ECF No. 43, was entered concerning Defendant Hampton's motion to dismiss, ECF No. 40.

Sergeant Hampton previously filed a motion to dismiss, ECF No. 40, which was granted in part.  ECF Nos. 43-44.  The motion was granted as to the claims for damages against Defendant Hampton in his official capacity, but the motion was otherwise denied.  ECF No. 44.

After conclusion of the discovery period, ECF No. 45, Sergeant Hampton filed a motion for summary judgment on November 9, 2016, ECF No. 49, supported by Sergeant Hampton's separately filed Declaration, ECF No. 51.  An Order was entered advising Mr. Hoever of his obligation to respond to the summary judgment motion, ECF No. 52, and his response was timely filed on January 9, 2017.  ECF No. 53.  The motion is ready for a ruling.

## I.    Legal standards governing a motion for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must then show[2] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case."  Id. at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

'genuine'" and the non-moving party "must do more than simply show that

there is some metaphysical doubt as to the material facts." <u>Matsushita</u>

<u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348,

1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere

existence of some factual dispute will not defeat summary judgment unless

that factual dispute is material to an issue affecting the outcome of the

case." <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1243 (11th

Cir. 2003) (quoting <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1023 (11th Cir.

2000)).

     "[A]t the summary judgment stage the judge's function is not himself

to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." <u>Anderson v. Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202

(1986).  "[T]here is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party."

<u>Anderson</u>, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of

evidence" is not enough to refer the matter to a jury).  The Court must

decide "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." <u>Hickson Corp.</u>, 357 F.3d at 1260 (quoting

<u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L.

Ed. 2d 202 (1986)).  All "justifiable inferences" must be resolved in the light

most favorable to the nonmoving party, <u>Beard</u>, 548 U.S. at 529, 126 S. Ct.

at 2578 (noting the distinction "between evidence of disputed facts and

disputed matters of professional judgment."),[3] but "only if there is a

'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127

S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in <u>Ricci v. DeStefano</u>, 557

U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "Where

the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec.</u>

<u>Indus. Co.</u>, 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

## II.    The relevant Rule 56(e) evidence

Mr. Hoever submitted an affidavit in which he states that on August

31, 2012, he was held in administrative confinement at Franklin

---

[3]  Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." <u>Beard</u>, 548 U.S. at 530, 126 S. Ct. at 2578 (citing <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

Correctional Institution awaiting a disciplinary hearing.  ECF No. 53 at 11

(Plaintiff's Ex. A).  As the Warden was making rounds on that day,

Mr. Hoever told the Warden that he had been asking for his "hygiene

supply for two days" and had received only toothpaste.  *Id.*  During that

conversation, Sergeant Hampton, who had been walking along with the

Warden, moved behind him and motioned for Mr. Hoever to stop.  *Id.* at 12.

Mr. Hoever states that after the Warden left, Sergeant Hampton "walked

immediately and directly to" him and began yelling at Mr. Hoever.  *Id.*

Sergeant Hampton told him to give his toothpaste to another inmate in the

room and said that Mr. Hoever gave him "a bad name."  *Id.*  Sergeant

Hampton ordered Mr. Hoever "never again to address the Warden for any

reason or to speak to anyone or to complain to anyone about anything."  *Id.*

Mr. Hoever said that Sergeant Hampton threatened him, telling him that if

he "wrote one grievance" or complained about that incident, he would spray

Mr. Hoever with chemical agents and put a knife in his locker.  *Id.*

Sergeant Hampton also told Mr. Hoever that if he ignored that warning and

wrote a grievance, it would be his last.  *Id.*

     Sergeant Hampton denies that he threatened Mr. Hoever and that he

overheard him complaining to the Warden.  ECF No. 49 at 4; Defendant's

Ex. A.  Sergeant Hampton states in his Declaration that at no time on

August 31, 2012, did he ever hear Mr. Hoever "complain to the Warden

about any conditions of his confinement."  Ex. A (ECF No. 51-1).  Sergeant

Hampton states that he did not forbid Mr. Hoever from making any further

complaints to anyone.  *Id.*  He states that he did not threaten Mr. Hoever

with physical harm from chemical agents or by placing a knife in his locker

so he would be issued a grievance.  *Id.*  He further denies that he told

Mr. Hoever that his next grievance or complaint would be his last.  *Id.*

## III.   Analysis

## 1.   Retaliation Claim

"Despite their incarceration, prisoners retain First Amendment rights

because '[p]rison walls do not form a barrier separating prison inmates

from the protections of the Constitution.'"  Thornburgh v. Abbott, 490 U.S.

401, 407, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (quoted in Hollins v.

Samuals, 540 F. App'x 937, 938 (11th Cir. 2013)).  A prisoner's First

Amendment right to free speech and to petition the government for a

redress of grievances is violated when the "prisoner is punished for filing a

grievance concerning the conditions of his imprisonment."  Boxer X v.

Harris, 437 F.3d 1107, 1112 (11th Cir. 2006).  To present a retaliation

claim, "a plaintiff must establish: (1) that his speech or act was constitutionally protected; (2) that the defendant's retaliatory conduct adversely affected the protected speech; and (3) that there is a causal connection between the retaliatory actions and the adverse effect on speech." Pittman v. Tucker, 213 F. App'x 867, 870 (11th Cir. 2007) (citing Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005)).

Here, Sergeant Hampton does not dispute that Mr. Hoever "engaged in constitutionally protected speech." *See* ECF No. 49 at 7. Additionally, Mr. Hoever provided evidence that he complained to the Warden about the conditions of his confinement. Moreover, a justifiable inference that must be given to Mr. Hoever as the nonmoving party is that implicit in Sergeant Hampton's threat is knowledge that Mr. Hoever has filed grievances. The first element is established.

As for the second element, Sergeant Hampton argues that "Plaintiff has not alleged or identified any retaliatory action taken by [Sergeant] Hampton to support a retaliation claim." ECF No. 49 at 7. Sergeant Hampton contends that Mr. Hoever's claim is not actionable because he did not incur "any recognizable adverse consequence from his verbal complaint to the warden." *Id.* at 8.

Case No. 4:14cv273-WS/CAS

Sergeant Hampton acknowledges the holding of the Eleventh Circuit in Bennett v. Hendrix that "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 9 (citing 423 F.3d at 1254). Furthermore, well established law has made clear that "a plaintiff need not show that his own exercise of First Amendment rights have been chilled, but instead a plaintiff can establish an injury if he can show that the retaliatory acts are sufficiently adverse that a jury could find that the acts would chill a person of ordinary firmness from exercising his First Amendment rights." Pittman v. Tucker, 213 F. App'x 867, 870 (11th Cir. 2007) (explaining the holding of Bennett, 432 F.3d at 1254-55).

However, Sergeant Hampton contends that a threat which contains "vague intimations of some unspecified harm" is not sufficient "adverse action." *Id.* at 10-11. Nevertheless, Sergeant Hampton admits that in the Eleventh Circuit, death threats, threats of physical violence, and "physical harm accompanied by threats of more harm to come" is sufficient to demonstrate "adverse action." *Id.* at 13.

In <u>Pittman v. Tucker</u>, the plaintiff (a former prisoner) was threatened by a prison Captain who said that "prison officials, not other inmates, would do 'something drastic' if Pittman continued to file grievances."  213 F. App'x at 870.  The Eleventh Circuit concluded "that a reasonable jury could find that the threat, if made, was sufficient to deter a person of ordinary firmness from filing additional grievances."  *Id.* at 871.  The Court noted that the threat "was likely to have a deterrent effect" because it came from one with significant authority, his job involved reviewing grievances, and the phrase "'something drastic' could easily be interpreted by an inmate as a threat of physical violence, either directly or thru deliberate inattention." *Id.*

Another threat was made in <u>Pittman</u> by a Sergeant who allegedly told the prisoner, "Learn to play the game or have a boot put in your ass."  213 F. App'x at 871.  The court noted that, in context, "a reasonable jury could find that, 'play[ing] the game' meant not filing additional grievances."  *Id.*  It was concluded that "a reasonable jury could find that there was a threat of possible violence that could deter a person of ordinary firmness from filing additional grievances."  *Id.*  Thus, the Eleventh Circuit held that "the district

court erred in granting summary judgment to these two defendants

regarding these claims of retaliation."  *Id.*

In this case, Mr. Hoever provided evidence that Sergeant Hampton

was upset that Mr. Hoever "gave him a bad name" with the warden and

ordered him to never speak to anyone or complain to anyone about

anything.  Sergeant Hampton then threatened to spray him with chemical

agents if he complained about that order or if he filed a grievance.  He also

threatened that if Mr. Hoever ignored that warning and wrote a grievance,

"it would be his last."  A reasonable jury could conclude that those threats

were sufficient adverse action that "would likely deter a person of likely

deter a person of ordinary firmness from engaging in" protected speech.

O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (quoted in Alvarez

v. Sec'y, Florida Dep't of Corr., 646 F. App'x 858, 864 (11th Cir. 2016)).

Accepting that Mr. Hoever has come forward with sufficient evidence to

show the second element, it is also evident that there is a causal

relationship between the retaliatory action of Sergeant Hampton and the

adverse effect on Mr. Hoever's speech.

There is a genuine dispute between the parties as to the facts of this

case.  Yet accepting Mr. Hoever's evidence in support of his version of

events, he has demonstrated the basis for a viable First Amendment

retaliation claim.  The motion for summary judgment should be denied.  As

Mr. Hoever has requested a jury trial, *see* ECF No. 18 at 12, this case

should be remanded for further proceedings prior to setting it for trial.

## 2.   Damages and Qualified Immunity

Sergeant Hampton points out that no claims for relief other than

nominal damages are available to Mr. Hoever.  ECF No. 49 at 15.  The

complaint requested a declaratory judgment, an injunction, and "any and all

manner of damages to which" Mr. Hoever may be entitled.  ECF No. 18 at

12.  Because there is no physical injury to Mr. Hoever as a result of the

alleged First Amendment violation, Plaintiff's request for monetary

damages must necessarily be limited to nominal damages as required by

42 U.S.C. § 1997e(e).  Furthermore, punitive damages may not be

awarded either in the absence of physical injury.  Al-Amin v. Smith, 637

F.3d 1192, 1199 (11th Cir. 2011).

Sergeant Hampton also raises qualified immunity as a defense.  ECF

No. 49 at 16-18.  A defendant "can be held liable only if the law so clearly

established the wrongfulness of his conduct that any reasonable official in

his place would have understood that he was violating the plaintiff's

constitutional rights." Singletary v. Vargas, 804 F.3d 1174, 1181 (11th Cir.

2015).  It has been well established that a corrections officer may not

threaten physical violence to prevent a prisoner from filing grievances.

Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005).  Qualified

immunity is not available to Sergeant Hampton on this First Amendment

claim.

Finally, Sergeant Hampton argues that Mr. Hoever's request for an

injunction is moot because Mr. Hoever is no longer at Franklin Correctional

Institution.  ECF No. 49 at 18.  "The general rule in our circuit is that a

transfer or a release of a prisoner from prison will moot that prisoner's

claims for injunctive and declaratory relief."  Smith v. Allen, 502 F.3d 1255,

1267 (11th Cir. 2007) abrogated on other grounds by Sossamon v. Texas,

563 U.S. 277, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011); see also

McKinnon v. Talladega Cnty., 745 F.2d 1360, 1365 (11th Cir. 1984)

(inmates transfer to a different jail moots claim for declaratory and

injunctive relief but not a claim for monetary damages). "The reason for this

rule is that injunctive relief is 'a prospective remedy, intended to prevent

future injuries,' . . . and, as a result, once the prisoner has been released,

the court lacks the ability to grant injunctive relief and correct the conditions

of which the prisoner complained." Smith, 502 F.3d at 1267 (internal

citation omitted, otherwise citing to Wahl v. McIver, 773 F.2d 1169, 1173

(11th Cir. 1985) (per curiam) (stating that a prisoner's past exposure to

sub-par conditions in a prison "does not constitute a present case or

controversy involving injunctive relief")).  That rule remains the law in this

Circuit and controls this case. See Dunn v. Warden Ware State Prison, 644

F. App'x 898, 900, n.2 (11th Cir. 2016) (noting that because the prisoner

was "no longer housed in either Ware State Prison or Calhoun State

Prison, his claims for injunctive relief against the prison officials there are

moot."); *see also* Zatler v. Wainwright, 802 F.2d 397, 399 (11th Cir. 1986)

(relying on Wahl and holding that the prisoner's "claims for declaratory and

injunctive relief are now moot" in light of his transfer to another prison and

then his subsequent release).  Thus, Plaintiff's requests for injunctive and

declaratory relief under § 1983 are moot.

   In light of the foregoing, it is respectfully **RECOMMENDED** that

Defendant Hampton's motion for summary judgment, ECF No. 49, be

**DENIED** as to Plaintiff's First Amendment claim because there is a genuine

dispute of material fact and on the basis of qualified immunity, but the

motion should be **GRANTED** as to Plaintiff's requests for monetary

damages above nominal damages, and his request for declaratory and

injunctive relief.  It is further **RECOMMENDED** that this case be

**REMANDED** for further proceedings prior to setting it for trial.

    **IN CHAMBERS** at Tallahassee, Florida, on July 5, 2017.


    S/    Charles A. Stampelos    
    **CHARLES A. STAMPELOS**
    **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

    **Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**